UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUAN WILLIAMS,

        Plaintiff,

vs.

Case No. 21-CV-11300

HON. GEORGE CARAM STEEH

CITY OF SOUTHGATE, et al.,

        Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (ECF No. 31)

      Plaintiff, Dequan Williams, filed this action against the City of Southgate and two Southgate police officers, Sergeant Nathan Mosczynski and Officer Christopher Parsons, acting in their individual capacities. Plaintiff alleges a § 1983 excessive force claim against Mosczynski and Parsons for actions they took pursuant to a traffic stop and subsequent arrest executed on June 6, 2018. Plaintiff also asserts a *Monell* claim against the City of Southgate for failure to train, supervise or discipline, as well as a ratification or acquiescence theory of liability. The matter is before the Court on defendants' motion for summary judgment (ECF No. 31). For

- 1 -

the reasons stated below, defendants' motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

On the afternoon of June 6, 2018, Sgt. Mosczynski and Officer Parsons were on patrol at 18777 Northline when they observed a black Cadillac Escalade loitering in the parking lot of Motel 6, which is known as a high narcotic trafficking area. Investigation Report, ECF No. 31-3, PageID.240. Sgt. Mosczynski and Officer Parsons conducted a traffic stop on the vehicle for having illegal tints and a vision obstruction on the rearview mirror. *Id*. Williams, the driver of the vehicle, complied and pulled his car into the Sunoco gas station at Northline and Reeck.

Officer Parsons approached the driver's side of the vehicle and smelled a strong odor of burnt marijuana. Investigation Report, p.3. He requested that Williams roll down his window and asked for his insurance and registration. Williams told Officer Parsons he would have to look for the information. Parsons ran the registration through LEIN and confirmed the vehicle did not have insurance. While Officer Parsons was running Williams' registration in the squad car, Sgt. Mosczynski told Williams that they were probably going to search his vehicle based on the odor of

marijuana and asked if he had anything illegal in his vehicle. Dash-Cam Footage 812, System ID 162775, 13:02:15-13:03:50. Plaintiff indicated that he did not. *Id*.

Officer Parsons walked back to the driver's side window of the vehicle and asked Williams if he was able to find his insurance information. *Id.* at 13:03:50. Williams stated that he could not. *Id.* Officer Parsons asked Williams to step out of the vehicle and immediately thereafter, Sgt. Mosczynski advised Officer Parsons that Williams had a knife in his pocket. *Id.* at 13:04:38-13:04:45. Officer Parsons instructed Williams to put the knife down and told him to step out of the vehicle at least five more times. *Id.* at 13:04:45-13:05:17. While the audio from the Dash-Cam footage can be heard, including shouting by the officers and what sounds like a scuffle, a visual of the relevant activity is obstructed by the vehicle itself.

Williams' version of events is that he responded to the officers' instructions to place the pocket knife on the center console. After that, Williams recalled being dragged out of the vehicle and slammed to the ground. Williams describes that the left back side of his head hit the ground. Williams dep., p. 42-43. Williams further explains that at least one officer had his knee or foot in his back after he slammed him to the ground,

and an officer punched him all over his body with what felt like a weapon. In addition, he felt like he was shot with a gun in his leg. *Id*. at 42-45. Afterward, Williams passed out and he was not able to identify which officer or officers were involved in the beating. *Id*. at 43-44. Williams is not certain what happened to the bullet, but believes it travelled through his body and he says that the wound is still there. *Id*. at 45. During the incident, Williams can be heard on the dash-cam telling the officers that he had been in an accident and has a closed head injury, but the sound of gunfire cannot be discerned. Dash-Cam Footage at 13.06-13.08.

According to Officer Parsons' Investigation Report, Williams refused to comply with the officers' orders, so Parsons grabbed Williams' left wrist to escort him out of the vehicle. Investigation Report, p. 4. Parsons wrote that Williams dove out of the vehicle on to the ground, while yelling that Parsons pulled him from the vehicle. *Id*. Williams was eventually handcuffed by officers.

A search was conducted of Williams' vehicle and suspected marijuana, cocaine and crack cocaine were found. Williams was arrested for possession with intent to deliver cocaine/crack cocaine, CCW pocket knife, and resisting/obstructing a police officer. Booking Report, ECF No.

31-4, PageID.253. Williams was also cited for tinted windows, no insurance, and obstructed vision. Investigation Report; Ticket No. A720882, ECF No. 31-5, PageID.255.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v.*

*Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*,

477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is proper if a plaintiff's complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in a light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint states a plausible claim for relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). "The court should not assume facts that could and should have been pled, but were not." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008) (internal citations omitted). If plaintiff's Complaint does not raise a claim of entitlement to relief, defendants are entitled to dismissal pursuant to Rule 12(b)(6).

## ANALYSIS

I.  Claim Against Sgt. Mosczynski

To be held liable for a § 1983 claim, "[e]ach defendant must be 'personally involved' in the unconstitutional action." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020). Plaintiff has not asserted that Sgt. Mosczynski personally used excessive force against him in the

Complaint. At paragraphs 20 and 21, plaintiff alleges that Mosczynski ordered Parsons to drag plaintiff out of the car and Parsons did so, throwing him to the ground with such force that his head hit the pavement. ECF No. 1, PageID.5. During his deposition, plaintiff testified that he could not identify who beat him during the arrest. In his responsive pleading, plaintiff does not dispute defendants' argument that he failed to allege any wrongdoing on behalf of Sgt. Mosczynski.[1] The claim against Sgt. Mosczynski shall be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

II. Qualified Immunity – Officer Parsons and Sgt. Mosczynski

Plaintiff's § 1983 claim against Officer Parsons and Sgt. Mosczynski is subject to the qualified immunity exception, which "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

---

[1] In the statement of facts section of plaintiff's response brief, plaintiff indicates that "Officer Mosczynski proceeded to pull Mr. Williams out of his vehicle with such force that Mr. Williams [sic] head and face struck the ground." ECF No. 38, PageID.285. The Court believes that this reference to Mosczynski is a scrivener's error because a few pages earlier, plaintiff states that "Defendant Parsons reached through the window, opened the automobile door, grabbed Plaintiff, and pulled him out of the vehicle." ECF No. 38, PageID.283. The single reference to Mosczynski pulling plaintiff out of the car conflicts with the version of events described in the Complaint, plaintiff's deposition and even elsewhere in the response to defendants' motion for summary judgment.

*Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the affirmative defense of qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). A showing of "mere negligence or recklessness is insufficient" for plaintiff to successfully remove the cloak of qualified immunity from the officers. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999). Instead, plaintiff must prove that the officers' conduct "fell below an objective standard of reasonableness," which requires plaintiff to establish that the officers "acted knowingly or intentionally" to violate plaintiff's constitutional rights. *Id*. (quoting *Harlow*, 457 U.S. at 815).

Accordingly, to overcome the qualified immunity defense, plaintiff must prove that (1) the officers' method of detaining/arresting plaintiff violated plaintiff's Fourth Amendment right to be free from unreasonable and excessive force; and (2) there is case law that clearly establishes the unconstitutional nature of the way that the officers detained plaintiff at the time of the apprehension. *Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 399 (6th Cir. 2022).

First, in determining whether the officers violated the Fourth Amendment by using excessive force to effectuate the seizure and/or arrest, the Court must analyze "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal citations omitted). The reasonableness of force used by a police officer "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. (internal citation omitted). As such, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

In this case, plaintiff was initially pulled over for minor traffic violations. Upon approaching plaintiff's vehicle, however, Officer Parsons immediately smelled a strong odor of burnt marijuana coming from inside the vehicle. On this basis, Officer Parsons could reasonably conclude that

plaintiff was under the influence of drugs. Officer Parsons asked plaintiff to step out of the vehicle due to the odor of marijuana, but plaintiff did not comply. At the same time, Sgt. Mosczynski told Officer Parsons that plaintiff had a knife in his pocket. Officer Parsons can be heard on the dash cam audio yelling, "No. No. No. Put it down. Put it down. No. No. No. Put it, put it down. Here, throw it here." Dash-Cam Footage, 13:04:42-13:04:52. Based on the presence of a weapon, the suspicion of drugs, and the fact that plaintiff was not compliant, the officers on the scene could reasonably be in fear of their own safety as well as that of others in the area.

    Plaintiff continued to defy orders to exit the vehicle even though Officer Parsons told him to do so at least five more times: "Step, step out of the vehicle. You're not being (inaudible) or anything like that. (Inaudible). Sir, I'm going to ask you to step, look, I'm going to ask you to step out of the vehicle, sir. Step out of the vehicle. Step out of the vehicle . . . . Why are you shaking so bad? Step out of the vehicle." Dash-Cam Footage, 13:04:56-13:05:17. The fact that plaintiff was armed, and that he ignored officers' commands to exit the vehicle, would lead a reasonable officer to believe that the threat posed by plaintiff was not contained until he was out of the car and handcuffed. This belief has further support from information,

revealed to Officer Parsons during the LEIN check, that plaintiff had previously been arrested for fleeing and eluding. Under the circumstances presented here, the officers were justified in using some amount of force to restrain plaintiff.

In addition to showing that his constitutional rights were violated, plaintiff must also establish that the right was clearly established at the time of the violation to avoid dismissal on the grounds of immunity. *Griffith v. Coburn*, 473 F.3d 650, 658 (6th Cir. 2007). "Factors relevant to assessing disproportionate use of force include, but are not limited to, the need for the force, the degree of force applied, the injuries inflicted, and totality of the circumstances surrounding the use of the force." *Landis v. Baker*, 297 F. App'x 453, 462 (6th Cir. 2008) (citation omitted).

Regarding the amount of force applied, plaintiff alleges that one of the officers slammed him to the ground, put his knee or foot in his back, hit him all over with a weapon, and shot him in the leg. There is no corroboration that any of these actions occurred. During the incident, plaintiff cannot be heard crying out in pain. Images of plaintiff sitting in the back of the patrol car, right after the incident, show the back of his head but do not show any cuts, bruises or blood. Dash-Cam Footage, 13:26:33. Nor does the Dash

Cam audio corroborate plaintiff's testimony that he suffered a beating or a gunshot wound during his arrest. At some point, plaintiff can be heard telling the officers that he had been in an accident and has a closed head injury. However, plaintiff is unable to establish that he suffered an "objectively verifiable injury" due to Officer Parsons' actions. There is no medical evidence to corroborate plaintiff's description of injuries because the Court granted defendant's motion to strike plaintiff's medical expert report. ECF No. 46. Plaintiff has simply failed to present any evidence establishing his alleged injuries.

III.  Monell Claim - City of Southgate

"Local governing bodies ... can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services,* 436 U.S. 658, 690 (1978). But "[l]iability against [a local government] arises only if it violated a constitutional or statutory right through a custom or practice of doing so." *Hidden Vill., LLC v. City of Lakewood,* 734 F.3d 519, 523 (6th Cir.2013). *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 138 (6th Cir. 2014). Having found that plaintiff fails to

establish that Sgt. Mosczynski and Officer Parsons violated his constitutional rights, his claim against the City fails as well. *Id*., *see also Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001).

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (ECF No. 31) is GRANTED.

Dated:  January 19, 2023

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 19, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk